1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    MICHAEL NIETO,                          Case No. 22-cv-06983-JST
              Plaintiff,
8
                                            ORDER DENYING PLAINTIFF'S
9         v.                                MOTION TO STRIKE; DENYING
                                            DEFENDANTS' MOTION FOR
10   KATHLEEN ALLISON, et al.,               SUMMARY JUDGMENT;
                                            DIRECTIONS TO DEFENDANTS
              Defendants.
11                                          Re: ECF No. 35, 38
12
13        Plaintiff, an inmate at California State Prison - Solano, has filed a *pro se* action pursuant to
14   42 U.S.C. § 1983, against Correctional Training Facility ("CTF") officers Peefley and Perez-
15   Pantoja.  Now pending before the Court is Defendants' motion for summary judgment.  ECF No.
16   35.  Plaintiff has filed an opposition, ECF No. 38, and Defendants have filed a reply, ECF No. 40.
17   Plaintiff has also filed a motion to strike.  ECF No. 38 at 20-30.  For the reasons set forth below,
18   the Court DENIES Plaintiff's motion to strike, ECF No. 38 at 20-30; DENIES Defendants' motion
19   for summary judgment, ECF No. 35; and sets a schedule for briefing the merits of Plaintiff's
20   claims.
21                                      **DISCUSSION**
22   **I.    Factual Background[1]**
23        **A.    Defendant Peefley**
24        On April 28, 2021, during a body search, defendant CTF officer Peefley reached into
25   Plaintiff's shorts and boxers; grabbed Plaintiff's penis and testicles and squeezed them while
26   laughing, saying "We got a real gang member right here;" and then forcefully pulled Plaintiff's
27
28   ───────────────
     [1] The following facts are undisputed unless otherwise noted.

United States District Court
Northern District of California

shorts down, exposing Plaintiff's genitals to everyone.  ECF No. 1 at 4-6.

That same day, Plaintiff contacted the Monterey Rape and Crisis Center ("MRCC") to report that he had been sexually assaulted by defendant Peefley.  ECF No. 1 at 8, 11.

On April 30, 2021, Plaintiff submitted a grievance alleging that defendant Peefley had sexually assaulted him on April 28, 2021, by placing the grievance in the locked box in the dayroom.  ECF No. 1 at 11.  There is no record of this grievance in the prison records, and Defendants deny receiving any such grievance.  *See* ECF No. 35-3 ("Monroy Decl."), at ¶¶ 6-9; ECF No. 35-4 ("Moseley Decl."), at ¶¶ 7-12; ECF No. 35-5 ("Ramos Decl."), at ¶¶ 6-9; ECF No. 35-7 ("Torres Decl."), at ¶¶ 6-9.

On or about May 1, 2021, Plaintiff again contacted the MRCC to report that he had been sexually assaulted.  ECF No. 1 at 8, 11.

On May 7, 2021, Plaintiff filed a Prison Rape Elimination Act ("PREA") complaint, which was given the log number CTF-PREA-20-05-010.  ECF No. 1 at 11, 13.

On or about June 17, 2021, Plaintiff filed a grievance alleging that the appeals coordinator was not processing his grievances, in particular the two grievances that he had placed in the grievance box, one regarding a PREA violation and the other regarding retaliation.  This grievance has a date-stamp indicating that it was received by CTF Appeals on June 21, 2021.  ECF No. 38 at 65-66.  However, the grievance does not have a number assigned to it, and there is no log of this grievance in the grievance tracking system, Strategic Offender Management System ("SOMS").  *See generally* Monroy Decl. (listing all grievances received by CTF OOG between April 28, 2021 and September 26, 2022); Moseley Decl. (listing all grievances received by the OOA between April 28, 2021 and September 26, 2022).

Plaintiff submitted a Form GA-22 to CTF Grievance Coordinator Monroy, requesting a printout of his grievance activity, and requesting the status of his grievance alleging sexual assault and his grievance alleging retaliation.  ECF No. 38 at 5-6.  In response, Plaintiff received a printout dated June 21, 2021 listing his grievance activity: three grievances filed in 2020, and no grievances filed in 2021.  On the printout was the following handwritten note: "The OGG has not received any new grievances [from you] in 2021."  ECF No. 38 at 5-6, 69.

2

On or about July 1, 2021, Plaintiff submitted another grievance regarding defendant Peefley's sexual assault. The grievance was assigned the log number 135532. In the grievance, Plaintiff stated that he had previously filed a grievance regarding the sexual assault, as well as a related "retaliation grievance," "to no avail":

> This is a STAFF COMPLAINT pursuant to PREA 28 C.F.R. § 115.51 . . . Further, this is the second time that I have filed this complaint along with another related "retaliation" complaint, to no avail. However, I've taken other measures to report this issues. A complete and detailed report regarding this issues have been addressed via PREA process, since such complaints "disappear" and never reach their destination.
>
> . . .
>
> During this time I also filed a 602 staff complaint PREA allegation as well as separate related "retaliation" complaint but never received a log number. I next filed a 602 regarding the log number and was told that my complaints were never received.
>
> It should be noted here, that complaints on J. Peefley and Perez have a tendency to "disappear" out of a locked 602 box.

ECF No. 35-4 at 10-11. The time stamp on this grievance indicates that it was received by CTF Appeals on July 7, 2021. *Id.*

On or about July 6, 2021, Plaintiff received a letter from Monterey County Rape Crisis Center ("MCRCC") staffer Carl Mucha. In this letter, Mucha recounted Plaintiff telling him that his grievances were not being acknowledged or confirmed. ECF No. 38 at 36.

On July 7, 2021, the CTF OOG rejected Grievance No. 135532 as untimely, stating that Plaintiff had discovered the claim on April 28, 2021, and should have submitted the claim by May 28, 2021 to meet the 30-day calendar day requirement set forth in the regulations:

> You did not submit the claim within the timeframe required by California Code of Regulations, title 15. The date you discovered the adverse policy decision, action, condition, or omission was 04/28/2021. The date you submitted this claim was 07/06/2021. You should have submitted your claim on or by 05/28/2021 to meet the 30 calendar day requirements set forth in the regulations.
>
> This serves as your response by the office of grievances. If you are dissatisfied with this response, you may appeal the rejection decision to the CDCR's office of appeals.

ECF No. 35-4 at 14.

On July 20, 2021, Plaintiff appealed the July 7, 2021 rejection of Grievance No. 135532 as follows:

> Claimant has timely filed a PREA allegation (Please see attache [CTF-PREA-21-050-010.,

3

dated 4/29/2021]. The instatnt filing was do to the fact that Claimants 1st(writen) complaint "disappeared" and thereby Claimant resubmitted it. ¶ However, CTF Appeals Coordinator and OOG officials have attempted to screen Claimant out of filing such an allegation on one of their own. Thereby have conspired to intentionally disregard CCR 15, § 3084.8(b)(4); 3084.9(B)(5)(A)(1-7); and 28 C.F.R. 115, §§ 115.51(c).
¶ Claimant has since filed a staff complaint on CTF Appeals Coordinator and unidentified OOG officials for intentional and knowingly attempting to deprive me of Constitutional rights and protected conduct [right to file grievances]; and for covering up staff sexual misconduct.

ECF No. 35-4 at 12-13. In support of his appeal, Plaintiff attached the July 6, 2021 letter from

MCRCC staffer Mucha, in which Mucha reported that CTF sergeant Vera stated that Plaintiff's

PREA allegation was received by staff on April 29, 2021, and assigned the log number CTF-

PREA-21-05-010. ECF No. 35-4 at 12, 15.

On or about August 2, 2021, Plaintiff submitted a second appeal of his first level decision

as follows:

The Appeals Coordinator and OOG officials have deliberately failed to process Claimant's grievance (See Attach) . . . Thereby, I incorporate by reference as it was fully set forth here Claimants "staff complaint" of appeals coordinator and OOG officials 602, see attach. This is **NOT** a relitigation of grievance LOG # 1355532 . . . nor should be **misconstrued** as such. The instant complaint is regarding the corruption and the negligent handling of staff complaints by appeals coordinator and the OOG.

ECF No. 35-4 at 18 (emphasis in original). The time stamp on this grievance indicates that it was

received by the OOA on August 9, 2021. *Id.*

On September 21, 2021, the Office of Appeals denied Plaintiff's appeal, stating that the

OOG had properly rejected Grievance No. 135532 as untimely:

You claim on April 28, 2021, staff sexually assaulted you. Pursuant to Title 15, section 3482(b), a claimant shall submit a claim within 30 calendar days of discovering an adverse action and discovery occurs when a claimant knew or should have reasonably known of the adverse action. You submitted this claim on July 1, 2021. You did not submit your claim within the 30 calendar day timeframe of discovery period. Because the Office of Grievances' decision was proper, this claim is denied. Additionally, this claim is being addressed outside the grievance and appeal process.

Your claim has been denied. Therefore, there is no applicable remedy.

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is denied. This decision exhausts the administrative remedies available to the claimant within CDCR.

ECF No. 35-4 at 28.

On or about December 3, 2021, Plaintiff sent a letter to the Office of Appeals, requesting

the status of all grievances filed in 2021 and noting that many of his grievances had been lost:

> I am requesting an update of all my appeal activity for the entire year of 2021.

> I have been having issues with appeals being "LOST" from a marked appeal box, pad lock, that is only accesable by staff with the key, come up missing. Specifically appeals in regards to a sexual assault/PREA, and being threatened to drop the appeal against my attacker.

> I am receiving no tracking proof of receipt or any acknowledgment of my appeals being logged in.

ECF No. 38 at 74. The date-stamp on this GA-22 indicates that it was received by OOA on December 17, 2021. *Id.*

On December 5, 2021, Plaintiff sent a Form GA-22 to CTF appeals coordinator Monroy, requesting the status of all grievances filed since April 28, 2021 and noting that many of his grievances had not been received:

> I would like to know the status of all 602's that I have filed since 04/28/2021. You have screened out or failed to receive a number of my 602's even those that allege staff sexual conduct, contrary to 15 CCR. I filed a 602 on you in 6/7/21; and one in 7/20/21 and no response yet. I filed another on C/O Perez on 5/25/21 – again no response. I mail you a GA-22 every two weeks inquiring about my [grievances] to no response. Why? I look forward to a response from you.

ECF No. 38 at 68. The date-stamp on this GA-22 indicates that it was received by CTF Appeals on December 8, 2021. *Id.*

According to SOMS, Plaintiff only filed two grievances in 2021: (1) Grievance No. 135532, received by CTF OOG on July 6, 2021; and (2) Grievance No. 135877, received by CTF OOG on July 6, 2021. *See* Monroy Decl., ¶¶ 6-9; Moseley Decl., ¶¶ 7-12; Ramos Decl., ¶¶ 6-9; Torres Decl., ¶¶ 6-9.

### B.    Defendant Perez-Pantoja

Plaintiff describes his relevant interaction with defendant Perez-Pantoja as follows. On May 27, 2021, defendant Perez-Pantoja opened Plaintiff's cell door and said, "Who's Nieto?" despite clearly knowing who Plaintiff was. Plaintiff was sitting on the bottom bunk at the time. Plaintiff raised his hand and said, "I'm Nieto." Defendant Perez-Pantoja then said, "You need to remember that shit that happened in the hallway was a fucking accident. We'll make sure [you] never fucking go home." Defendant Perez-Pantoja stared at Plaintiff; stepped back; shut the door;

and walked away.  ECF No. 1 at 12[2]; ECF No. 35-2 at 16; ECF No. 38 at 62-63, 71-72.

Immediately afterwards, Plaintiff grabbed a grievance and filled it out to grieve defendant Perez-

Pantoja's threatening conduct.  Plaintiff's cellmate signed the grievance to verify that he had

witnessed and heard the events.  Plaintiff dropped the grievance in the lockbox, which is only

accessible by correctional officers.  ECF No. 35-2 at 16; ECF No. 38 at 71-72.  On or about July 4,

2021, Plaintiff submitted another grievance regarding defendant Perez-Pantoja's threats.  In the

grievance, Plaintiff states that the threats took place on May 22, 2021, and reports having

previously submitted a grievance regarding these issues on May 25, 2021 that went missing.  This

grievance is accompanied by a declaration from Plaintiff's cellmate, Andres Rendon, also dated

July 4, 2021, attesting to the veracity of Plaintiff's statements.  ECF No. 38 at 5-6, 71-72.

Defendant Perez-Pantoja denies Plaintiff's allegations in their entirety.  Defendant Perez-

Pantoja states that, on May 27, 2021, he did not go to Plaintiff's cell or speak to Plaintiff.  He

states that he was working in a different facility altogether that day.  That day, he was working as

a floor officer in Facility C, D Wing, and Plaintiff was housed in Facility C, B Wing.  He also

denies ever saying to Plaintiff on May 27, 2021, or any other day, "Who's Nieto?  Whatever

happened in the hallway, you better remember it was an accident, or, sabes."  Defendant Perez-

Pantoja also states he was unaware that Plaintiff had filed a sexual assault complaint against

defendant Peefley until he learned of this lawsuit.  Dkt. No. 35-6 ("Perez-Pantoja Decl."), at ¶¶ 2-

4.  SOMS shows no grievance submitted by Plaintiff regarding his May 27, 2021 interaction with

defendant Perez-Pantoja.  SOMS also does not have any record of the two grievances referenced

above by Plaintiff – the grievances that he states he filed on or about the date of the event, and on

or about July 4, 2021.  Monroy Decl., ¶¶ 6-9; Torres Decl., ¶¶ 6-9; Ramos Decl., ¶¶ 6-9.

**C.    CDCR Administrative Remedy Process**

During the relevant time period, the California Department of Corrections and

Rehabilitation ("CDCR") provided inmates the following administrative remedy process.  An

---

[2] In his complaint, Plaintiff alleges that Perez-Pantoja said, "Who's Nieto?  Whatever happened in the hallway you better remember it was an accident, or, Sabes.  (Sabes, is spanish for 'you know')."  ECF No. 1 at 12.

1   inmate had the ability to dispute "a policy, decision, action, condition, or omission by the

2   [California Department of Corrections and Rehabilitation] Department or departmental staff that

3   causes some measurable harm to their health, safety, or welfare" by submitting a written

4   grievance.  15 Cal. Code Regs. § 3481(a) (eff. Mar. 10, 2021).[3]  An inmate seeking to grieve non-

5   healthcare-related issues must, within 30 days of discovering the claim, submit his claim for a first

6   level review by filling out and submitting a CDCR Form 602-1 to the Institutional Office of

7   Grievances ("IOG") at his prison.  15 Cal. Code Regs. § 3482 (eff. Mar. 10, 2021); Monroy Decl.,

8   ¶ 2.  The inmate submits the grievance by dropping it into a locked box inside his housing unit.

9   An Office Technician retrieves these grievances each weekday.  Monroy Decl., ¶ 4.  When the

10   OOG receives the grievance, the grievance is logged into the Strategic Offender Management

11   System ("SOMS"), which tracks all grievances received from an inmate, including the grievance

12   log number, a summary of the grievance, and the disposition of the grievance.  *Id.*

13       In the Form 602-1, the inmate is required to "describe all information known and available

14   to the [inmate] regarding the claim, including key dates and times, names and titles of all involved

15   staff members (or a description of those staff members), and names and titles of all witnesses, to

16   the best of the [inmate's] knowledge."  15 Cal. Code Regs. § 3482.  In response, the inmate shall

17   receive a written decision from the IOG no later than 60 calendar days after receipt of the

18   grievance, clearly explaining the reasoning for the Reviewing Authority's decision as to each

19   claim.  *Id.* at §§ 3481(a); 3483(i) (eff. Mar. 10, 2021).

20       If an inmate is dissatisfied with the first level decision, the inmate may appeal the decision

21   to the second level by submitting a CDCR Form 602-2 to the CDCR's Office of Appeals ("OOA")

22   in Sacramento within 30 calendar days of "discovering" the first level decision.  15 Cal. Code

23   Regs. §§ 3481(a), 3485 (eff. Mar. 10, 2021); Monroy Decl., ¶ 2.  In response, the Office of

24   Appeals shall issue a written decision clearly explaining the reasoning for the decision.  15 Cal.

25   Code Regs. at § 3481(a).

26

27   [3] The regulations that set out the features of the administrative remedies process for California
    prisoners underwent a substantial restructuring in 2020, 2022, and 2024.  The references in this
28   Order to sections of Title 15 of the California Code of Regulations are to the sections effective in
    2021 during the relevant events.

United States District Court
Northern District of California

Whether at the first or the second level, a grievance may only be rejected for the following reasons: (1) failure to submit the grievance within 30 calendar days of discovering the issue or to submit the appeal within 30 days of discovering the first level decision; (2) the grievance concerns an anticipated event; (3) the grievance is substantially duplicative of a prior claim by the same claimant; (4) the grievance concerns harm to a person other than then claimant; or (5) the grievance concerns the regulatory framework for grievance and appeals process itself.  15 Cal. Code Regs. § 3487(a) (eff. Mar. 10, 2021).  If the grievance is rejected as untimely, the claimant shall be notified of the following dates as determined by the reviewing authority: the date the claim was discovered, the date the claim was received, and the deadline for receipt of the claim pursuant to either subsection 3482(b) or 3485(b), whichever is applicable.  15 Cal. Code Regs. § 3487(b) (eff. Mar. 10, 2021).

The first level decision does not exhaust administrative remedies, unless the response is that the grievance is under inquiry or investigation, pending legal matter, or time expired.  15 Cal. Code Regs. § 3483(m) (eff. Mar. 10, 2021); Monroy Decl., ¶ 2.  To exhaust administrative remedies, an inmate must complete the review process by obtaining a written decision from the Office of Appeals, sometimes referred to a second-level decision.  15 Cal. Code Regs. § 3843(m) (eff. Mar. 10, 2021).  The rejection of a grievance by the OOA does not constitute exhaustion of administrative remedies.  15 Cal. Code Regs. § 3483(m)(1) (eff. Mar. 10, 2021).  "Exhaustion requires a claimant to appeal [decisions rejecting a claim pursuant to section 3487] as provided in section 3485 [which sets forth how to prepare and submit an appeal]."  15 Cal. Code Regs. § 3483(m)(1) (eff. Mar. 10, 2021).

During the relevant time period, Section 3084 provided that "a grievance in whole or part containing allegations of . . . staff-on-inmate sexual misconduct . . . shall be immediately reviewed by the Hiring Authority or designee."  15 Cal. Code Regs. § 3084(a) (eff. Mar. 10, 2021).  Section 3084(c)(1) provided that there is no time limit for allegations of staff-on-inmate sexual misconduct.  15 Cal. Code Regs. § 3084(c)(1) (eff. Mar. 10, 2021).  Section 3084(c)(5) provided that the inmate could consider the absence of a timely response at any level a denial at that level."  15 Cal. Code Regs. § 3084(c)(5) (eff. Mar. 10, 2021).

## II.     Fed. R. Civ. P. 56(h) Motion

Plaintiff has requested that the Court strike the supporting declarations of Office of Appeals Associate Director Howard Moseley, California State Prison Solano Grievance Coordinator S. Torres, and California Training Facility Grievance Coordinator R. Monroy, alleging that these declarations are submitted in bad faith and contain inaccurate statements, in violation of Fed. R. Civ. P. 56(h).  ECF No. 38 at 20-30.  Specifically, Plaintiff argues that these declarations omit facts central to the resolution of this case; are self-serving; and make conclusory misrepresentations regarding Section 3084 that are intended to mislead the Court.  Plaintiff challenges the declarations as follows:

- The declarants identify the incorrect governing state regulations by citing to Sections 3480-3497 which govern Joint Venture Programs and are inapplicable here; and by deliberately omitting any reference to 15 Cal. Code Regs. § 3084(c)(1), which provides that there is no time limit for allegations for staff-on-inmate sexual misconduct.

- The declarants falsely state that Grievance No. 135532 was correctly denied as untimely when 15 Cal. Code Regs. § 3084(c)(1) provides that there is no time limit for allegations of staff-on-inmate sexual misconduct.

- The declarants falsely state that, outside of Grievance No. 135532, there were no other grievances that contained allegations regarding defendant Peefley's sexual assault or defendant Perez-Pantoja's retaliation.

- Defendant Moseley falsely states that Grievance No. 135532 was unexhausted when the Office of Appeals denial stated verbatim "This decision exhausts the administrative remedies available to the claimant within the CDCR" and when he has acknowledged that OOA decisions represent the final step in the administrative remedy process.

- Defendant Monroy's statement that an office technician retrieves grievances from the lockbox supports Plaintiff's claim that either Monroy or the office technician disregarded, lost, or threw away Plaintiff's grievances.

- Some of the grievances attached as exhibits to these declarations do not have log numbers, indicating that these declarants could, and did, refuse to log received grievances, supporting Plaintiff's claims that they did not log some of his grievances.

*See* ECF No. 38 at 20-30.

Fed. R. Civ. P. 56(h) provides that if the Court is satisfied that an affidavit or declaration submitted pursuant to Fed. R. Civ. P. 56 was submitted in bad faith, the Court may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it

United States District Court
Northern District of California

1   incurred as a result; and subject the offending part to appropriate sanctions.  Fed. R. Civ. P. 56(h).

2   Motions to strike are governed by Fed. R. Civ. P. 12(f), which permits a court to "strike from a

3   pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  *See* Fed. R. Civ. P.

4   12(f).  Motions to strike are generally disfavored and "should not be granted unless the matter to

5   be stricken clearly could have no possible bearing on the subject of the litigation . . . If there is any

6   doubt whether the portion to be stricken might bear on an issue in the litigation, the court should

7   deny the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F.Supp.2d 1048, 1057 (N.D. Cal.

8   2004) (internal citations omitted).  "Ultimately, whether to grant a motion to strike lies within the

9   sound discretion of the district court."  *Cruz v. Bank of New York Mellon*, C No. 12-00846, 2012

10  WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618

11  F.3d 970, 973 (9th Cir. 2010)).

12        The Court DENIES Plaintiff's motion to strike.  There is no indication that the statements

13  made in these declarations were made in bad faith to mislead the Court.  The declarations of

14  Moseley, Monroy, and Torres accurately describe their understanding of the applicable prison

15  regulations and the grievances filed by Plaintiff.  Whether these declarants identify the correct

16  prison regulations; correctly conclude that Grievance No. 135532 was correctly denied as

17  untimely; and correctly describe the subject matters of Plaintiff's grievances are legal matters to be

18  decided by the Court.  The Court therefore DENIES the motion to strike.  *Cf. Rielly v. D.R.*

19  *Horton, Inc.*, No. SACV 06–0867 AG (ANx), 2008 WL 4330299, at *3 (C.D. Cal. 2008) (denying

20  motion to strike where mere inconsistencies between statements in declaration offered by moving

21  party and the nonmoving party's evidence did not rise to level of falsehoods made in bad faith).

22  **III.    Summary Judgment Motion**

23        Defendants argue that they are entitled to summary judgment because Plaintiff did not

24  exhaust his administrative remedies against either defendant Peffley or defendant Perez-Pantoja;

25  because defendant Perez-Pantoja was not working in the area where Plaintiff was housed on the

26  day of the alleged retaliatory statement; because the allegations against defendant Perez-Pantoja

27  fail to state a claim for First Amendment retaliation; and because defendant Perez-Pantoja is

28  entitled to qualified immunity.  *See* generally ECF No. 35.

United States District Court
Northern District of California

### A.       Summary Judgment Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Exhaustion Argument**

       **1)      PLRA'S Exhaustion Requirement**

The PLRA sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 218.

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (alteration in original); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.") (emphasis and alterations in original). "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam) (administrative remedies unavailable where prison failed to timely respond to inmate's grievance; inmate filed grievance in January 2013 and officials had not responded by December 2014, when inmate filed federal civil rights claim). To fall within this exception to the PLRA's exhaustion requirement, an inmate must show: "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons

inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 823-24 (9th Cir. 2010). A prisoner need not exhaust further levels of review if he has been reliably informed by an administrator that no more remedies are available. *Brown*, 422 F.3d at 935. If prison officials improperly screen out an inmate's appeals, the inmate cannot properly complete the grievance process and administrative remedies are effectively unavailable. *Sapp*, 623 F.3d at 822-23. Administrative remedies are effectively unavailable when prison officials decline to reach merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 822-24.

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 216. The defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* The ultimate burden of proof remains with the defendant. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Fed. R. Civ. P. 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### 2) Analysis

#### 1. Defendant Peefley

Defendants argue that Plaintiff failed to exhaust his administrative remedies for his claim against defendant Peefley as follows. The administrative remedy process was available to Plaintiff, as shown by Plaintiff filing fifteen grievances during the relevant timeframe, nearly all of which reference the alleged sexual assault and which primarily grieve the manner in which he

United States District Court
Northern District of California

received – or did not receive – treatment for the assault, and reference the alleged retaliation for reporting the alleged sexual assault.  The only grievance that grieved the alleged sexual assault by defendant Peefley was Grievance No. 135532.  Grievance No. 135532 was not exhausted because it was properly rejected as untimely, and 15 Cal. Code Regs. §§ 3483(m)(l), 3486(m) provide that a grievance is not exhausted if rejected as untimely.  15 Cal. Code Regs. 3084 does not apply to grievances and therefore does not alter the 30-day calendar day deadline for filing a grievance.  15 Cal. Code Regs. 3084 only provides that allegations of sexual misconduct will be investigated, regardless of when they are brought to the attention of prison officials.  To the extent that Plaintiff argues that Grievance No. 270809 exhausted his claim against defendant Peefley, Grievance No. 270809 was properly rejected as duplicative of a prior claim, and 15 Cal. Code Regs. § 3486(m) provides that a grievance is not exhausted if rejected as duplicative.  Plaintiff's claims that prison staff thwarted his attempts to timely submit grievances against Defendants are "implausible" because Defendants allowed 12 other grievances concerning sexual assault or retaliation to proceed.  Plaintiff failed to take reasonable and appropriate steps to exhaust his grievance as he did not request a status update on his grievances until December 2021 and, after learning that no grievances regarding the claims in this action had been received, did not resubmit his grievances. *See generally* ECF Nos. 35, 40.

Plaintiff argues that he properly exhausted his administrative remedies regarding defendant Peefley's sexual assault by (1) filing a grievance immediately after the assault which went missing through no fault of his own, and (2) by filing Grievance No. 135532, which the OOA decision acknowledged exhausted his administrative remedies; and (3) to the extent that the rejection of Grievance No. 135532 as untimely bars the OOA decision from exhausting Grievance No. 135532, Grievance No. 135532, was improperly rejected as untimely, as 15 Cal. Code Regs. 3084 provides that there is no time limit for bringing a grievance alleging officer-on-inmate sexual misconduct. *See generally* ECF No. 38 at 1, 4-5.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has demonstrated that administrative remedies were effectively unavailable to him with respect to his grievance against defendant Peefley.

First, Defendants effectively rendered administrative remedies unavailable when they declined to reach the merits of Grievance No. 135532 for reasons unsupported by the applicable regulations. During the relevant time period, 15 Cal. Code Regs. § 3084(c) provided that there was no time limit for filing grievances alleging officer-on-inmate sexual misconduct. Defendants' reading of Section 3084(c) fails to apply the canons of statutory construction, which require reading subsection (c) in the context of the entire section. *See Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Section 3084 is divided into four subsections; and all four subsections reference grievances. Subsections (a) and (b) excuses grievances alleging sexual assault or misconduct from certain filing requirements. Specifically, subsection (a) excuses sexual misconduct grievances from the requirement that the prisoner must first pursue informal resolution before filing the grievance. Subsection (b) exempts sexual misconduct grievances from the prohibition on filing a grievance on behalf of another inmate. Reading subsection (c) in context, it is clear that, like subsections (a) and (b), it applies to sexual misconduct grievances and sets forth an additional exemption from the requirements for standard grievances.

In addition, subsection (c)(5) supports a finding that subsection (c) applies to grievances. Subsection (c)(5) states that an inmate "may consider the absence of a timely response at any level a denial at that level." 15 Cal. Code Regs. § 3084(c)(5). This language uses the language used to describe the administrative remedy process, i.e. levels of review and denials. For example, the OOA denial of Grievance No. 135532 stated: "Your claim has been *denied*." ECF No. 35-4 at 28 (emphasis added). Given the statutory context, the Court finds that 15 Cal. Code Regs. § 3084(c) exempts grievances alleging sexual misconduct from the 30-day deadline for filing a grievance. *Cf. Robinson v. Zambrano*, No. 20-CV-2106-GPC-AHG, 2022 WL 1104761, at *4 (S.D. Cal. Apr. 13, 2022) ("If an individual inmate's grievance relates to alleged sexual misconduct by a member of the CDCR staff, there is no time limit during which the inmate must file the grievance.") (applying CDCR regulations in effect in 2020); *Washington v. Sutton*, No. 1:20-CV-00983 AWI-GSA-PC, 2023 WL 5533497, at *7 (E.D. Cal. Aug. 28, 2023), *report and recommendation*

*adopted*, No. 1:20-CV-0983 JLT-GSA-PC, 2023 WL 7092081 (E.D. Cal. Oct. 26, 2023) (same). Because there was no time limit for Plaintiff to file a grievance alleging staff sexual misconduct, the denial of Grievance No. 135532 was unsupported by the applicable regulations. Prison officials therefore rendered administrative remedies unavailable to Plaintiff with respect to his claim that defendant Peefley sexually assaulted him. *Sapp*, 523 F.3d at 822.

Second, Defendants effectively rendered administrative remedies unavailable when they reliably informed Plaintiff that there were no further remedies available with respect to his claim against defendant Peefley. *Brown*, 422 F.3d at 935. In the September 21, 2021 OOA decision, the OOA informed Plaintiff that his administrative remedies were exhausted: "This decision exhausts the administrative remedies available to the claimant within CDCR." ECF No. 35-4 at 28. An inmate could reasonably conclude from this decision that he had exhausted his claim and need not take any further action

Finally, there is a triable issue of material fact as to whether Defendants prevented Plaintiff from filing a grievance regarding defendant Peefley's sexual assault on or about April 30, 2021. The following circumstantial evidence in the record supports Plaintiff's claim that correctional staff interfered generally with Plaintiff's grievances and interfered specifically with his attempt to timely file a grievance regarding defendant Peefley's sexual assault. Starting June 17, 2021, Plaintiff repeatedly informed correctional staff that he had filed a grievance regarding the sexual assault and a grievance regarding retaliation, both of which had gone missing, and repeatedly sought to determine the status of his missing grievances:

- In a June 17, 2021 grievance, Plaintiff referenced having previously filed two grievances, one concerning a PREA allegation and another concerning retaliation, which had not been acknowledged by prison staff.

- In or around June 21, 2021, Plaintiff asked about the status of his grievances and received a June 21, 2021 printout of his grievances in response.

- In Grievance No. 135532, Plaintiff stated that he previously filed a grievance regarding defendant Peefley's sexual assault, but it had disappeared.

- MCRCC staff Mucha stated in a July 2021 letter that Plaintiff had contacted Mucha after the sexual assault and told Mucha that his grievances were not being processed.

- In the July 20, 2021 appeal of Grievance No. 135532, Plaintiff stated that his first

United States District Court
Northern District of California

written complaint regarding the sexual assault had disappeared, and that Grievance No. 135532 was a re-submission of that complaint.

- In a December 3, 2021 letter to the OOA, Plaintiff stated that many of his grievances ended up "lost" despite being placed in the lockbox, and specifically referenced his grievance alleging sexual assault.

- In a December 5, 2021 GA-22, Plaintiff stated that the majority of the grievances he had filed since April, 28, 2021 had not been received or processed.

In addition, the June 17, 2021 grievance does not appear in SOMS despite a date-stamp indicating that it was received by CTF Appeals on June 21, 2021, which casts doubt on the accuracy and reliability of SOMS in logging Plaintiff's grievances. Finally, the fact that Plaintiff filed numerous grievances in 2022 could support a finding that Plaintiff makes liberal use of the prison grievance system, which makes it suspect that he only filed two grievances in 2021 despite suffering a sexual assault and retaliation that year.

For the foregoing reasons, the Court finds that Defendants rendered administrative remedies effectively unavailable to Plaintiff with respect to his claim against defendant Peefley. The Court therefore DENIES Defendants' motion for summary judgment with respect to the claim against defendant Peefley.

### 2.    Defendant Perez-Pantoja

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of material fact as to whether Plaintiff submitted a grievance regarding defendant Perez-Pantoja the day of, or soon after, Perez-Pantoja's alleged retaliatory comments. The following circumstantial evidence in the record supports Plaintiff's claim that he filed a grievance alleging that defendant Perez-Pantoja retaliated against him and that Defendants refused to process the grievance.

- In June 2021, Plaintiff inquired as to the status of his grievance alleging sexual assault and grievance alleging retaliation.

- On July 1, 2021, in Grievance No. 135532, Plaintiff stated that he had previously filed a grievance regarding defendant Peefley's sexual assault and a retaliation complaint, but both grievances had disappeared. Later in the grievance, Plaintiff specified that the complaints that disappeared were against defendants Peefley and Perez-Pantoja.

- Plaintiff states that he submitted a grievance form on or about July 4, 2021, complaining of defendant Perez-Pantoja's retaliatory comments on May 22, 2021;

United States District Court
Northern District of California

and stating that he had originally filed this grievance on May 25, 2021 but that the grievance went missing. This grievance is accompanied by a declaration from Plaintiff's cellmate, also signed July 4, 2021, attesting to the veracity of Plaintiff's allegations. This grievance form does not have a date-stamp indicating that it was received by the OOG or OOA, but, viewing the record in the light most favorable to Plaintiff, the Court presumes that Plaintiff submitted this grievance to prison officials.

- In a December 3, 2021 letter to the OOA, Plaintiff stated that many of his grievances ended up "lost" despite being placed in the lockbox, and specifically referenced his grievance alleging being threatened to drop the grievance against the officer who sexually assaulted him.

- On December 5, 2021, Plaintiff submitted a Form GA-22, stating that he had filed a grievance regarding defendant Perez-Pantoja on May 25, 2021, which had never received a response.

Plaintiff is inconsistent as to the date of defendant Perez-Pantoja's retaliatory comments—either May 22 or May 27—and as to the date when he filed the grievance regarding the retaliation—either the day the comments were made, two to three days after the comments were made, or May 25. Whether these minor inconsistencies are simple failures of recollection or signs of fabrication is a matter for a jury to decide. Viewing the evidence in the light most favorable to Plaintiff, as this Court must, they do not undermine his essential claim. Accordingly, the Court finds that there is a triable issue of material fact as to whether Defendants rendered administrative remedies effectively unavailable to Plaintiff with respect to his claim against defendant Perez-Pantoja by refusing to process Plaintiff's grievances against defendant Perez-Pantoja. The Court DENIES Defendants' motion for summary judgment on the grounds that the claim against defendant Peefley is unexhausted.

### C.    First Amendment Retaliation Claim Against Defendant Perez-Pantoja

#### 1)    Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The adverse action in the first element of a retaliation claim need not independently

United States District Court
Northern District of California

deprive the plaintiff (prisoner or not) of a constitutional right.  *See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977) (absence of right to continued employment does not defeat claim for retaliatory firing for First Amendment expression).  Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient.  *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (threat of placement in administrative segregation could constitute adverse action).  The mere threat of harm, regardless of whether the threat is carried out, can be a sufficiently adverse action to support a retaliation claim.  *Id.* at 688-89; *see also Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (threat of discipline or transfer to another prison, even if not carried out, was sufficient to support retaliation claim).

The second element, causation, requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason.  *Shephard*, 840 F.3d at 689-91 (finding genuine issue of material fact as to whether defendant sent inmate to administrative segregation with intent to (1) follow 15 Cal. Code Regs. § 3335(a) or (2) retaliate for inmate complaint about staff misconduct).  Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action.  *See id.* at 690.

### 2)     Analysis

Defendants argue that they are entitled to summary judgment with respect to the First Amendment retaliation claim against defendant Perez-Pantoja because (1) defendant Perez-Pantoja did not personally participate in the relevant conduct because he was not working in Plaintiff's housing facility on May 27, 2021; (2) the alleged statement was not an adverse action because, as a matter of law, vague and non-specific statements do not constitute an adverse action, citing to *Joseph v. Dep't. of Corr.*, No. 3:30-cv-00294-SLG-KFR, 2024 WL 1389539, at *6 (D. Alaska Feb. 13, 2024) and *Wray v. Garton*, No. 3:18-cv-01617-SB, 2020 WL 1330234, at *4 (D. Or. Mar. 2, 2020); (3) defendant Perez-Pantoja did not know of the sexual assault claim against defendant Peefley; and (4) defendant Perez-Pantoja did not make the alleged comment because of the sexual assault claim.  ECF No. 35-1 at 17-21.  Plaintiff disputes defendant Perez-Pantoja's

United States District Court
Northern District of California

claim that he was not in Plaintiff's housing facility that day and never made those comments. Plaintiff states that defendant Perez-Pantoja could move freely between facilities, and his work assignment did not preclude him from coming to Plaintiff's housing facility if he so wished. Plaintiff also provides a declaration from his cellmate attesting to defendant Perez-Pantoja's retaliatory comments.  ECF No. 38 at 5-14.

Viewing the record in the light most favorable to Plaintiff, the Court finds that there is a triable issue of material fact as to whether defendant Perez-Pantoja made the alleged retaliatory comments.  Defendants do not dispute Plaintiff's claim that defendant Perez-Pantoja could move between housing units regardless of his specific work assignment for the day.  Defendants' arguments rely on the Court crediting their version of events—that defendant Perez-Pantoja did not go to Plaintiff's housing facility on the relevant date and never made the alleged retaliatory comments—and disbelieving both Plaintiff's account of the relevant events and the declaration submitted by Plaintiff's cellmate, stating that he witnessed the retaliatory remarks.  At summary judgment, the Court may not make credibility determinations and, where the evidence conflicts, as is the case here, the Court must assume the truth of the evidence submitted by the non-moving party.  The Court therefore assumes for purposes of this motion that defendant Perez-Pantoja made the retaliatory comments recounted by Plaintiff.

Defendants' argument that the retaliatory comments were not adverse are contrary to the governing law and fail to acknowledge the context in which the comments were made. Defendants argue that *Brodheim* holds that a threat of harm can be an adverse action only if it intimates that some sort of punishment or adverse regulatory action will follow; that therefore vague and non-specific statements cannot constitute an adverse action; and that defendant Perez-Pantoja's alleged comments were vague and non-specific because it was unclear what hallway incident defendant Perez-Pantoja was referring to, and because it did not specify repercussions for engaging in any specific conduct.  However, in *Brodheim*, the retaliatory statement made by the correctional officer was similar to the statement here.  Officer Cry wrote on inmate Brodheim's grievance, "I'd also like to warn you to be careful what you write, req[u]est on this form." *Brodheim* found this statement to be an adverse action, holding that "by its very nature, a

20

United States District Court
Northern District of California

statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Brodheim*, 548 F.3d at 1270. The *Brodheim* court further noted there are "a number of things" that a correctional officer can do to an inmate that fails to comply with a warning to stop doing things that can have a negative effect. *Id.* The *Brodheim* court concluded that "an allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim . . . [and] the mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Id.* Moreover, although Defendants argue that the comments were vague, both Plaintiff and his cellmate clearly understood defendant Perez-Pantoja to be referring to the hallway incident involving defendant Peefley. Also, the context in which the comments took place suggest that a reasonable juror could find the comments to be threatening retaliation if Plaintiff continued to pursue grievances regarding the alleged assault. The sexual assault had happened just a month prior. Defendant Perez-Pantoja specifically sought out Plaintiff in his cell to make the threat. Plaintiff's attempts to grieve the assault had been met with resistance, as his grievances kept disappearing.

Finally, defendant Perez-Pantoja's claim that the comments were not because of Plaintiff's protected conduct rely on a disputed issue of material fact – whether defendant Perez-Pantoja knew that Plaintiff had filed a PREA allegation and a grievance against defendant Peefley. Resolving this dispute requires a credibility determination, which the Court cannot do at the summary judgment stage.

Because there is a triable issue of material fact as to whether defendant Perez-Pantoja made the comments and whether the comments were because of Plaintiff's protected conduct, the Court DENIES Defendants' request for summary judgment on the grounds that the claim against defendant Perez-Pantoja fails as a matter of law.

### D.    Qualified Immunity

Defendants argue that defendant Perez-Pantoja is entitled to qualified immunity because (1) his statement was not an adverse action; he did not act with retaliatory animus; and he did not make any statement to Plaintiff because of Plaintiff's protected conduct; and (2) it would not have

1   been evident to a reasonable prison official that making a vague and non-specific statement to an

2   inmate before learning about an inmate's sexual assault could be construed as First Amendment

3   retaliation for submitting the sexual assault claim.  ECF No. 35-1 at 21-22.

4       The doctrine of qualified immunity protects government officials from liability for civil

5   damages as long as their conduct does not violate clearly established statutory or constitutional

6   rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231,

7   (2009).  The doctrine of qualified immunity attempts to balance two important and sometimes

8   competing interests — "the need to hold public officials accountable when they exercise power

9   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

10   perform their duties reasonably." *Id.* (internal quotation marks and citation omitted).  "The

11   purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might

12   unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus

13   disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993

14   (9th Cir. 2009).  To determine whether an officer is entitled to qualified immunity, the Court must

15   consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was

16   clearly established at the time of officer's misconduct.  *Pearson*, 555 U.S. at 232.

17       The Court DENIES Defendants' request for summary judgment on the grounds that

18   defendant Perez-Pantoja is entitled to qualified immunity.  Defendants' qualified immunity

19   arguments rely on their version of the relevant events which, as discussed above, are disputed by

20   Plaintiff; and rely on an incorrect understanding of what constitutes an adverse action.  At the

21   summary judgment stage, the Court must resolve conflicts in favor of the non-moving party and,

22   viewing the record in the light most favorable to Plaintiff, there is a triable issue of material fact as

23   to whether defendant Perez-Pantoja made the alleged comments, and whether the alleged

24   comments were retaliatory and threatening.  *See, e.g.*, *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th

25   Cir. 2002), *overruled on other grounds by Pearson*, 555 U.S. at 239 (premature to grant qualified

26   immunity where there are disputed issues of material fact).

27                              **CONCLUSION**

28       For the foregoing reasons, the Court orders as follows:

United States District Court
Northern District of California

22

1.      The Court DENIES Defendants' motion for summary judgment. ECF No. 35. The Court finds that administrative remedies were rendered unavailable to Plaintiff with respect to his claim against defendant Peefley; that there is a triable issue of material fact as to whether administrative remedies were rendered unavailable to Plaintiff with respect to his claim against defendant Perez-Pantoja; and that there is a triable issue of material fact as to whether defendant Perez-Pantoja made the alleged retaliatory comments and whether he made the comments because of Plaintiff's protected conduct.

2.      The Ninth Circuit has directed that when a motion for summary judgment for failure to exhaust is denied, disputed factual questions relevant to exhaustion should be decided by the judge. *Albino*, 747 F.3d at 1170-71 (permitting limited preliminary proceeding to "decide disputed questions of fact"). There is a disputed factual question as to whether administrative remedies were rendered unavailable to Plaintiff with respect to his claims against defendant Perez-Pantoja. Accordingly, within fourteen (14) days of the date of this order, Defendants shall inform the Court whether they elect to (1) proceed with a limited evidentiary hearing regarding whether administrative remedies were rendered unavailable to Plaintiff with respect to his claims against defendant Perez-Pantoja, or (2) wish to waive the exhaustion defense and proceed to the merits of this action.

Should Defendant elect to proceed with a limited evidentiary hearing, the Court will appoint counsel for Plaintiff for the limited purpose of representation during the evidentiary hearing. The evidentiary hearing will be limited to determining whether administrative remedies were rendered unavailable to Plaintiff with respect to his claims against defendant Perez-Pantoja. This limited appointment is without prejudice to appointment of counsel for purposes of trial at a later date, upon application and a showing of good cause.

This order terminates ECF No. 35.

**IT IS SO ORDERED.**

Dated: March 12, 2025

_____
JON S. TIGAR
United States District Judge